## DUG MOORE v. STATE.

No. A-1398.   Opinion Filed March 8, 1913.

(130 Pac. 517.)

1. GAMING—"Gambling Device"—Information. The proh'bitions contained in sections 2422 and 2426, Comp. Laws 1909, do not alone extend to those who deal or play or conduct the 'various games of chance therein specified, but such prohibition extends to the carrying on or opening of any such prohibited game, and the use therein of any device. And any table or other device, necessarily adapted to the use, and necessarily used in the carrying on of any such game, is a gambling device in contemplation of law, and the setting up or using of such table or device is prohibited; and an information under said sections, charging the defendant with permitting certain tables to be set up and used for the purpose of gambling in rooms occupied by him and under his control, charges a public offense.

2. JURY—Summoning Talesmen. Where all of the jurors, whose names have been regularly drawn from the jury box and summoned, do not appear at a term of the court, the trial judge, in his discretion, may order other drawings from the jury box, or he may order an open venire addressed to the sheriff summoning the necessary number of talesmen from the body of the county to complete the jury.

(Syllabus by the Court.)

*Appeal from Tulsa County Court;*
*N. J. Gubser, Judge.*

Dug Moore was convicted of violating the gambling laws, and appeals. Affirmed.

*Davidson & Williams,* for appellant.

*Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

FURMAN, J. Appellant demurred to the information upon the ground that it did not state facts sufficient to constitute a public offense against the laws of the state of Oklahoma. The information alleged that on the 15th day of January, 1910, in Tulsa county, appellant "did unlawfully and wrongfully permit a certain gambling table and devices to be set up and used,

to wit, one crap table and one roulette wheel in a certain room of a certain building situate on the west side of Main street in the city of Tulsa, Okla., and known as the Moore Hotel, said room and hotel being then and there in the possession and occupied by said Dug Moore, at and on which certain games, to wit, craps and roulette, were then and there conducted and played by divers persons, whose names are unknown to your informant, for money and other representations of value; said Dug Moore then and there having the control of said room and building described as aforesaid."

Sections 2422 and 2426, Comp. Laws 1909, are as follows:

"Sec. 2422. Owners or Employees of Games Guilty.—That every person who deals, plays or carries on, or opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, poker, roulette, craps, or any banking or percentage game played with dice, cards, or any device, for money, checks, credit, or any representative of value, is guilty of a misdemeanor, and is punishable by a fine of not less than one hundred dollars nor more than one thousand dollars, and by imprisonment in the county jail for a term not less than thirty days nor more than six months."

"Sec. 2426. Penalty for Leasing Building or Grounds for Gambling.—Every person who shall permit any gambling table, bank, or gaming device prohibited by sections 2422 and 2424 of this act, to be set up or used for the purpose of gambling in any house, building, shed, shelter, or booth, lot or other premises to him belonging, or by him occupied, or of which he hath, at the time, possession or control, shall be, on conviction thereof, adjudged guilty of a misdemeanor, and punished by a fine not exceeding two hundred dollars, nor less than one hundred dollars, or by imprisonment in the county jail for a term not exceeding six months nor less than thirty days, or by both such fine and imprisonment in the discretion of the court."

The two sections above quoted were enacted by the Legislature of Oklahoma Territory in 1893, and were continued in force in this state by the terms of the Constitution. In 1897 these sections were construed; and an information charging substantially the same offense as that charged in the information now before us was held to be good by the Supreme Court of

Oklahoma territory in the case of *Jones v. Territory,* 5 Okla. 536, 49 Pac. 934. Judge Tarsney, speaking for the court, said:

"We are bound to give the language used by the Legislature such interpretation as will support its evident intent, if the language used is fairly susceptible of such interpretation. That the Legislature intended to prohibit the setting up or use of gambling tables is beyond doubt; and that they intended to punish those who should permit such tables to be set up cannot be questioned. * * * We are therefore clearly of the opinion that it was the intention of the Legislature to prohibit the owners, occupants, or persons in possession or control of houses, buildings, etc., from permitting any gaming table, bank, or gaming device to be set up or used for the purpose of gambling therein; and that the language of sections 1 and 5, above quoted, with sufficient clearness, shows such intent, and that therefore the information in this case did charge a public offense, and that the demurrer was rightly overruled."

We think that Judge Tarsney was correct in his interpretation of these statutes, and that his decision in the case of *Jones v. Territory* is conclusive of this question.

Second. It appears from the record that out of the list of jurors selected by the jury commissioners and regularly drawn and summoned for the regular panel in the county court of Tulsa county, at the term at which this cause was tried, only seven of the jurors so drawn and summoned qualified, and that appellant objected to going to trial until a full panel had been regularly drawn and summoned and impaneled as the regular trial jury for that term of the court. The court overruled this objection, and ordered the clerk to issue an open venire addressed to the sheriff of Tulsa county for eight talesmen from which to complete the trial panel for this cause, to which the appellant objected. The objection was by the court overruled, and appellant excepted thereto. Eight talesmen were summoned and appeared under said open venire, and five of these qualified upon examination for cause, and these five talesmen, were placed upon the panel, to all of which appellant excepted.

The contention of counsel for appellant is that he had a right to a full panel of jurors duly drawn from the jury box, as selected by the jury commissioners, and that the trial court was without authority to order the sheriff to summon additional jurors upon an open venire from the body of the county. To sustain this contention would be to oftimes subject the trial courts to great and unnecessary delay in drawing and summoning talesmen. This objection was passed upon in an elaborate opinion by Judge Doyle in the case of *Robert Watson v. State, ante,* 130 Pac. 816, decided at the present term of this court; and we there held that the objection was not well taken. Even if the matter had never been decided by this court, it is settled by the provisions of the statute.

Section 3987, Comp. Laws 1909, relating to juries in county courts, among other things provides:

"The court may for any cause in its discretion, excuse any person drawn and summoned as a petit juror: Provided, further, that at any time during a term of court, after a petit jury has been drawn and summoned, in the manner as herein provided, for the trial of any cause, a regular panel of jurors shall appear to be insufficient, the jury may be completed from talesmen, or the court may direct an open venire to issue to the sheriff for such number of jurors as may be deemed necessary, to be selected from the body of the county: Provided, that jurors in the county court shall receive the same compensation as jurors in the district court."

Our statute does not require that the names of additional jurors shall be drawn from the box when all of those who were originally drawn do not appear. The judge, whenever in his discretion he regards it as necessary, may order other drawings from the box, or he may order an open venire and have the talesmen selected from the body of the county. A defendant is not entitled to any particular juror. All that the law vouchsafes to him is a fair and impartial trial jury, selected in substantial compliance with the law. No authorities are cited by counsel for appellant in support of their contention, and no attempt is made to show any injury to appellant or how he was

deprived of any substantial right by the ruling of the trial court.

Section 3995, Comp. Laws 1909, is as follows:

"A substantial compliance with the provisions of this act shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder, unless the ir- regularity in drawing, summoning or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. A substantial com- pliance ·with the provisions of this act shall be sufficient to pre- vent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing, and summoning or impaneling the same, resulted in depriving a party litigant of some substantial right: Provided, however, that such irregu- larity must be specifically presented to the court at, or before, the time the jury is sworn to try the cause."

We think that the action of the court in this case was a substantial compliance with the provisions of our statute, and that, in the absence of any showing of injury to appellant, it would be a miscarriage of justice to set aside this verdict upon the objection made. This is not only the law in Oklahoma; but it is manifestly just, and is in strict harmony with the weight of authorities.

The law is thus stated in 24 Cyc. 254:

"Where some of the jurors summoned fail to appear, it is not necessary, in the absence of statute, for the court to delay the impaneling of the jury or postpone the trial; nor is it necessary for the court to have other jurors summoned to fill the places of those who are absent, or to issue attachments for the absent jurors."

In *Patterson v. State,* 48 N. J. Law, 381, 384, 4 Atl. 449, loc. cit. 451, the court said:

"The third assignment of error is that the court allowed the call of the jury to proceed before all .the jurors were present, and without a full list thereof. The record shows that, after the challenge to the array was overruled, the court ordered the list of jurors to be called. Upon the call, six jurors did not answer. The counsel of defendant objected to proceeding until all the jury were present. The objection was overruled, and

the names of 48 jurors summoned were put in the box, from which the jury for this cause was drawn. If it is necessary that every juror of the 48 summoned for service at the term should be present in court when a case is called for trial, it would be quite impossible to conduct the prosecution of criminal trials successfully. Our statute requires only that the list of 48 jurors be served. It does not require that all the jurors shall be present when the case is moved. The language of the section, with respect to a tales, clearly shows that the presence of all is not essential. It provides that if, by reason of challenges or the default of jurors, or otherwise, a sufficient number cannot be had of the original panel to try the issue, a tales may be awarded. The power of the court to excuse a juror from the general panel for cause is recognized in this as well as in other states. *Smith v. Clayton,* 29 N. J. Law, 358; *Ware v. Ware,* 8 Me. [8 Greenl.] 42; *State v. Ward,* 39 Vt. 230."

In *People v. Lee,* 17 Cal. 76, loc. cit. 80, the court, upon a like proposition, said:

"(7) When the court directed the clerk to call and impanel the jury in the cause, objection was made on the ground that several of the jurors of the original panel, summoned for the term, had been previously excused without the consent of the defendant; and, being overruled, the further objection was made that there was not a full panel present, and this was in the same manner disposed of. There was no error in these rulings."

In *State v. Hallback et al.,* 40 S. C. 298, 18 S. E. 919, the court held that:

"Defendant in a criminal case is not entitled to have the panel full, or entirely read over, before entering on his right of challenge."

The testimony in this case is overwhelming and conclusive as to the guilt of appellant. Appellant offered no evidence in his own behalf, but relies alone upon the technical skill and ability of his attorneys to secure a reversal of the judgment of the lower court. The instructions of the court are in harmony with the view expressed in this opinon. We find no error in the record.

The judgment is in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.