# R. W. HEWITT et al. v. STATE.

No. A-7975.   Nov. 28, 1931.
Dissenting Opinion Dec. 3, 1931.
Rehearing Denied Feb. 5, 1932.

(7 Pac. [2d] 495.)

118

Wallace & Wallace and Streeter Speakman, for plaintiffs in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. R. W. Hewitt, Fred Browning, and Wallace Foreman, hereinafter called defendants, were convicted in the district court of Creek county of conducting a gambling game and were each sentenced to pay a fine of $500 and to serve a term of one year in the state penitentiary. Fifteen defendants were jointly charged in the information. Only the three named were tried in this case.

The record discloses that at the time charged defendants with others were in the possession of a large building near the town of Oakhurst. This building was surrounded by a high wire fence. Within it was conducted a restaurant and cabaret with orchestra. Off from the dining room was what may be termed the gambling room, in which there were two crap tables, two roulette wheels, chuck-a-luck table, black jack table, money racks, chairs, cashier's cage, dice, cards, chips, a bird cage for chuck-a-luck—the usual equipment for the old time gambling house. Photographs are in the record. At the time charged defendants had or had caused this equipment to be set up and were operating the gambling house. Some 60 persons were engaged in gambling when the officers entered. Defendants did not take the stand and offered no testimony.

Complaint is made that the information is duplicitous. The material allegations are:

"That they, the said R. W. Hewitt, Fred Browning and Wallace Foreman * * * did then and there unlawfully, wilfully and feloniously, open, conduct and carry on and cause to be opened, conducted and carried on in a certain house called and known as Beau Monde Club, situated and being * * * within the county of Creek, State of Oklahoma, and by them occupied and of which they had control and did then and there permit and cause to be set up and used for the purposes of gambling, certain tables, apparatus and devices, to wit:

"Roulette wheels, crap tables, poker tables, black jack tables, chuck-a-luck and divers other gambling devices, at which banking and percentage games were played with cards, dice, and wheel and ball for chips, money, credits and other representatives of value and were conducted by the said R. W. Hewitt, Fred Browning and Wallace Foreman. * * *"

Defendants assert this information charges both the misdemeanor defined by section 1926, and the felony defined by section 1938, Comp. Stat. 1921. These sections are:

"1926. Any person who shall permit any gaming table, bank, or gaming device prohibited by this article, to be set up or used for the purpose of gambling in any house, building, shed, shelter, booth, lot or other premises to him belonging, or by him occupied, or of which he has, at the time, possession or control, shall be, on conviction thereof, adjudged guilty of a misdemeanor, and punished by a fine not exceeding $200, nor less than $100, or by imprisonment in the county jail for a term not exceeding six months nor less than 30 days, or by both such fine and imprisonment in the discretion of the court."

"1938. Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any represen-

tatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than $500, nor more than $2,000, and by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

It will be seen that section 1938 is directed against the person who opens, causes to be opened, conducts or deals the prohibited games. It denounces the opening, causing to be opened, conducting, or dealing such games as a felony. This statute is directed against one who actively does these prohibited things. Section 1926 is not directed against the person who actively does the things prohibited by section 1938, but against the person who permits another to use his property or property in his control for such purpose. If he does or causes to be done the prohibited act, he is guilty of a felony. If he permits another to use his property for the prohibited use, he is guilty of a misdemeanor. Moore v. State, 9 Okla. Cr. 9, 130 Pac. 517. Inspecting and analyzing the allegations to determine just what charge is made, it is evident the pleader is attempting to charge the active doing by defendants of the things forbidden by section 1938, and not the permitting of another to do them as prohibited by section 1926. Stripped of descriptive and formal matter, the information charges that defendants did "open, conduct, carry on and cause to be opened, conducted and carried on, the Beau Monde Club by them occupied and of which they had control, and did (permit and) cause to be set up and used for the purpose of gambling certain tables, etc." The words "by them occupied and of which they had control" are not used in section 1938, but is a proper allegation in charging the offense defined by that section. The word "permit" is a departure from the terms

of section 1938, and is in section 1926; if it were controlling or used alone with the allegations following it, defendants' contention would be of much more force, but it is coupled with the word "cause," i. e., "permit and cause to be set up," etc. The mere throwing in of the word "permit" does not bring the charge under section 1926; it is a surplusage. In Reed v. State, 17 Okla. Cr. 662, 191 Pac. 1041, a conviction for felony under section 1938 was affirmed. The information there was in practically the same words as in the instant case. The objection of duplicity of the information was not made in the Reed Case. The information here is not misleading and the trial court properly held it charged the felony defined by section 1938.

It is argued the search warrant is invalid and the evidence obtained thereby inadmissible for the reason the affidavit or complaint for the search warrant does not state that the personal property described is "concealed" nor name or describe the person to be searched.

The search warrant is issued under the general provisions of chapter 7, art. 19, Comp. Stat. 1921. Section 7009, Comp. Stat. 1921, pertaining to search warrants under the prohibitory liquor law, has no application. The affidavit or complaint is in positive terms and states that gambling paraphernalia, to wit, "roulette wheels, dice, crap tables, black jack tables and chips, are being kept and used for gambling in the described premises." Affiant then sets out the source of his knowledge and states the place is a public resort where persons gather and congregate for the purpose of gambling. The warrant directs the search of the house and the seizure of the described gambling paraphernalia, if found therein. Sections 2877, 2878, and 2879, Comp. Stat. 1921, state the grounds on which a general search warrant may issue. These sections are:

"2877. It may be issued upon either of the following grounds:

"First. When the property was stolen or embezzled, in which case it may be taken on the warrant, from any house or other place in which it is concealed, or from the possession of the person by whom it was stolen or embezzled, or of any other person in whose possession it may be.

"Second. When it was used as the means of committing a felony, in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or of any other person in whose possession it may be.

"Third. When it is in the possession of any person, with the intent to use it as the means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered, in which case it may be taken on the warrant from such person, or from a house or other place occupied by him, or under his control, or from the possession of the person to whom he may have so delivered it.

"2878. A search warrant shall not be issued except upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched.

"2879. The magistrate must, before issuing the warrant, take, on oath, the complaint of the prosecuting witness in writing, which must set forth the facts tending to establish the grounds of the application, or probable cause for believing that they exist."

Defendants contend that under these sections a search warrant can only issue, first, to search a person in possession of contraband, or, second, to search a place in which the property sought is concealed; that the search warrant

is invalid because the affidavit or complaint does not name or describe any person to be searched, and it is not alleged nor claimed that the property is concealed but, on the contrary, was in a place of public resort.

The first subdivision of section 2877, supra, applies to property stolen or embezzled only. The second subdivision, for the taking of property from the possession of the person by whom it was used in the commission of an offense or of any other person in whose possession it may be, is broad enough to authorize the seizing of gambling paraphernalia being used as shown by the record in this case. It did not require a search of the person of any one to discover this gambling paraphernalia, and it was not necessary that the warrant direct a search of any person. The third subdivision, for the seizing by search warrant of property in the possession of any person with intent to use it as a means to commit a public offense, is also broad enough to authorize a seizing of property of this kind when being used for gambling.

Under this assignment it is also urged the search was unlawful because the affidavit or complaint did not conclude, "against the peace and dignity of the state," as required by section 19, art. 7, state Constitution, citing several cases, none of which are applicable to an affidavit or complaint for search warrant.

Section 2879, supra, refers to the affidavit for search warrant as a complaint. It is, however, a mere showing by affidavit in the nature of testimony to make to the magistrate a prima facie showing of probable cause. The indictment, information, or complaint meant by section 19, art. 7, of the Constitution, are the formal pleadings under which a person is charged with an offense. It does

not include the complaint or affidavit to procure a search warrant.

It is also argued the search warrant is void because directed to and served by Sam B. Turner, superintendent of the Bureau of Criminal Identification, and not by an officer named by the statute. Sections 2880, 2882, Comp. Stat. 1921. The warrant is directed to:

"Any sheriff, constable, marshal or policeman, or Sam B. Turner, Supt. of Okla. State Bureau of Criminal Identification and Investigation, in the county of Creek."

By chapter 127, Session Laws 1925, the superintendent of the Bureau of Criminal Identification is made a peace officer and is given the power of sheriffs, constables, and municipal officers except in the service of civil process. The search warrant having been directed to him jointly with the other officers named, the holding of this court in the case of Dunn v. State, 40 Okla. Cr. 76, 267 Pac. 279, and Key v. State, 43 Okla. Cr. 450, 279 Pac. 931, is not in point. The superintendent having the power of a peace officer and the search warrant being jointly directed to him, service by him is valid.

Upon a consideration of the whole record, no material error is made to appear.

The case is affirmed.

CHAPPELL, J., concurs.

---

DAVENPORT, P. J. (dissenting). In dissenting from the opinion of the majority of the court, I do so for the reason that, after a careful study and examination of the authorities, I have reached the conclusion that the information upon which the defendants in this case were

tried is duplicitous. Omitting the caption and signature, the charging part of the information is as follows:

"That they, the said R. W. Hewitt, Fred Browning and Wallace Foreman, and other parties named in the information * * * did then and there unlawfully, wilfully, and feloniously, open, conduct and carry on and cause to be opened, conducted and carried on in a certain house called and known as Beau Monde Club, situated and being on the southeast quarter of the northwest quarter of section five (5), township eighteen (18) north, range twelve (12) east, and within the county of Creek, state of Oklahoma, and by them occupied and of which they had control and did then and there permit and cause to be set up and used for the purpose of gambling, certain tables, apparatus and devices, to wit:

"Roulette wheels, crap tables, poker tables, black jack tables, chuck-a-luck and divers other gambling devices, at which banking and percentage games were played with cards, dice, and wheels and ball for chips, money, credits and other representatives of value and were conducted by the said R. W. Hewitt, Fred Browning and Wallace Foreman, together with other parties named in the information."

The defendants demurred to the information on the ground that it is duplicitous; which demurrer was considered by the court, overruled, and exceptions allowed.

The record further shows that at the conclusion of all the evidence the defendants again raised the question of the duplicity of the information, directing the court's attention to the fact that the information, as the defendant contended, charged a misdemeanor and a felony in the same count. This motion was overruled and exceptions allowed.

The defendants then requested the court to instruct the jury that it might find the defendants guilty of the

offense of permitting gambling tables and devices to be set up; which request was denied. The defendants insist in their brief that the information in one count charged both a misdemeanor and a felony. That the information charges a misdemeanor under section 1926, C. O. S. 1921, and a felony under section 1938, C. O. S. 1921.

Section 2558, C. O. S. 1921, in part is as follows:

"The indictment or information must charge but one offense; but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information."

From a careful reading and study of the information in this case it is disclosed that the information contains the following provisions of section 1926, C. O. S. 1921:

"Any person who shall permit any gambling table, bank, or gambling device prohibited by this article, to be set up or used for the purpose of gambling in any house, building, shed, shelter, booth, lot or other premises to him belonging, or by him occupied, or of which he has, at the time, possession or control, shall be, on conviction thereof, adjudged guilty of a misdemeanor."

The information contains the following provisions of section 1938, C. O. S. 1921, which defines the crime of conducting a gambling game:

"Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, * * * shall be guilty of a felony."

It cannot be denied that the information in this case

uses all of the necessary provisions of both sections of the statute hereinabove referred to, one of which makes the conviction a misdemeanor and the other a felony. The provisions in section 1926 make the permitting of gambling devices to be set up in a building by one who has possession and control of the building an offense, and there is sufficient language in the information to charge an offense under this statute; and these provisions are in no wise essential to the crime of conducting a gambling house, yet they are all charged in the same information. When in doubt as to whether the indictment or information charges a felony or misdemeanor, the defendant should be given the benefit of the doubt, and the offense charged should be held to be a misdemeanor. Bowes v. State, 8 Okla. Cr. 277, 127 Pac. 883.

From a comparison of the sections of the statute with the allegations in the information it is clear to me that the information charges two offenses, one a misdemeanor and the other a felony.

In Kimbrell v. State, 7 Okla. Cr. 354, 123 Pac. 1027, 1028, this court, in the body of the opinion, said:

"It is true that in the case of De Graff v. State, 2 Okla. Cr. 540, 103 Pac. 538, this court expressed the opinion that, where an information or indictment charged more than one offense, the state might elect the count upon which the trial should proceed; but upon more mature reflection we are satisfied that we were wrong in saying that this could be done. If it is permissible to incorporate more than one offense in the same indictment or information, then an indefinite number of offenses might be so incorporated; and when the case was reached for trial the state might dismiss all of the counts in the indictment or information, except as to one offense. The purpose of the Constitution is that a defendant shall be informed as to the specific offense for which he is to

be tried, in order that he may prepare for trial. It would be a violation of the letter and spirit of our Constitution, and also of our statute, to inform a defendant of a number of different offenses, and require him to prepare for trial on all of them. This would give to the state the right to elect, when the trial began, which count would be pressed against the defendant. This would be a regular ambuscade, and would be a mockery on justice. We are of the opinion that an indictment or information must charge but one offense; and, where more than one offense is charged, it is bad for duplicity, and, upon objection being made to an indictment upon this ground, the case should be dismissed."

Kimbrell v. State, supra, is cited with approval in Weitz v. State, 24 Okla. Cr. 56, 215 Pac. 962.

This court has had the question of the duplicity of the information or indictment before it many times for consideration. Clark v. State, 5 Okla. Cr. 704, 115 Pac. 377; Kime v. State, 14 Okla. Cr. 111, 167 Pac. 1159; Williams v. State, 16 Okla. Cr. 54, 180 Pac. 559.

In Keenan v. State, 33 Okla. Cr. 400, 243 Pac. 1001, the court in the first paragraph of the syllabus says:

"The information does not come within the scope of section 2558, Comp. Stat. 1921, which provides that an indictment or information must charge but one offense, but that where the same act may constitute different offenses, the different offenses may be set out in different counts in the same information and the accused may be convicted of either offense, because the facts charging the making of mash and the facts constituting the erection and possession of a still constitute two distinct transactions and charge two separate offenses."

The opinion by the majority of the court goes into the analysis of the two sections on the question of gambling and maintaining a gambling house, and held the infor-

mation good on the theory that the language was not applicable to the offense of which the defendants were convicted, and to be surplusage, and in support of its contention cites Reed et al. v. State, 17 Okla. Cr. 662, 191 Pac. 1041. An examination of the Reed Case shows that the question of the duplicity of the information was not raised by the defendants. The only question raised in the Reed Case is the question that the information did not state facts sufficient to constitute a cause of action against the defendants.

It is further disclosed in the Reed Case that while the language used in the information is similar to the language used in the information in this case, the duplicity of the information was not called into question and the court was not given an opportunity to pass upon the same. In the Reed Case the defendants were convicted of operating and conducting prohibited gambling houses, and this court held that the evidence was sufficient.

In this case the state proceeded to trial after the demurrer to the information, on the ground of duplicity, had been overruled, and introduced its testimony which resulted in a conviction of the three defendants an trial.

There are many other questions raised by the defendants in this case that are of vital importance and to my mind were prejudicial to the rights of the defendants and deprived them of that fair and impartial trial guaranteed to them under the Constitution and laws of this state. Our statutes provide that in charging a defendant with crime the indictment or information must set forth the acts constituting the offense in ordinary and concise language. It also provides that a demurrer may be filed on the ground that the information does not state facts sufficient to constitute a public offense, and that

more than one offense is charged in the information or indictment.

I have carefully considered the record, and the briefs of the plaintiffs in error and the state in this case, and in my opinion the court erred in overruling the demurrer of the defendant on the ground that the information was duplicitous and charged more than one offense. The demurrer of the defendants should have been sustained. For the errors herein mentioned, the case should be reversed, with directions to the court below to sustain the demurrer and proceed further in the case as provided by law.